# United States District Court
# Eastern District of New York

---

16-CV-4963
(Matsumoto, D.J.)

---

LAZARO GILOCOMPO,

*Petitioner*,

against

DARWIN LACLAIR, Superintendent,

Respondent.

---

**AFFIDAVIT AND MEMORANDUM OF LAW IN OPPOSITION TO PETITION FOR A WRIT OF HABEAS CORPUS**

---

RICHARD A. BROWN
District Attorney
Queens County
*Attorney for Respondent*
125-01 Queens Boulevard
Kew Gardens, New York  11415
(718) 286-586-6652

JOHN M. CASTELLANO
JOHNNETTE TRAILL
WILLIAM H. BRANIGAN
   Assistant District Attorneys
      *Of Counsel*

MARCH 1, 2017

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

AFFIDAVIT IN OPPOSITION TO PETITION FOR A WRIT
OF *HABEAS CORPUS*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    FACTUAL AND LEGAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . 2

MEMORANDUM OF LAW IN OPPOSITION TO
PETITION FOR A WRIT OF *HABEAS CORPUS*. . . . . . . . . . . . . . . . . 13

    POINT ONE

        THE STATE COURT PROPERLY APPLIED
STATE LAW TO FIND PETITIONER'S CLAIM
PROCEDURALLY BARRED. . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    POINT TWO

        THE STATE COURT'S REJECTION OF
PETITIONER'S INEFFECTIVENESS CLAIM
WAS NOT CONTRARY TO, OR AN
UNREASONABLE APPLICATION OF,
CLEARLY ESTABLISHED SUPREME COURT
PRECEDENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
LAZARO GILOCOMPO,                          :

                        Petitioner,        :    AFFIDAVIT IN
                                              OPPOSITION TO
       -against-                         :    PETITION FOR
                                              WRIT OF HABEAS
                                 :    CORPUS
DARWIN LACLAIR,      Superintendent,
                                 :
                     Respondent.        16-CV-04963 (KAM)
                                 :
-------------------------------------------------------x

STATE OF NEW YORK)
                      ) ss.
COUNTY OF QUEENS  )

        WILLIAM H. BRANIGAN, an Assistant District Attorney in the County of Queens and an attorney admitted to practice law in this Court, being duly sworn, deposes and states as follows:

        1.     I am an Assistant District Attorney, of counsel to Richard A. Brown, the District Attorney of Queens County, attorney for respondent in this matter.  I am submitting this affidavit in opposition to petitioner's application for a writ of *habeas corpus* and in response to this Court's November , 2016, Order to Show Cause directing respondent to file an answer to the petition.  I make the statements in this affidavit upon information and

belief, based upon my review of the records and files of the Queens County District Attorney's Office.

2.     Pursuant to this Court's order, respondent is supplying to the Court a) the transcript of the trial proceedings in New York State Supreme Court, Queens County; b) the briefs submitted to the Appellate Division, Second Department, consisting of petitioner's brief, the State's brief, the petitioner's reply brief, and the decision affirming petitioner's conviction and sentence, *People v. Gilocompo*, 125 A.D.3d 1000 (2d Dept. 2015); c) petitioner's application for leave to appeal to the New York Court of Appeals, the State's response, and the decision denying petitioner's application, *People v. Gilocompo*, 25 N.Y.3d 1163 (2015).

## Factual and Legal Background

3.     At around 9:00 a.m., on October 16, 2010, Manuel Pucci was walking on 98th Street, near 38th Avenue, in Queens, to get the train to go to work with $100 in his left pants pocket, $500 in his right pants pocket, and his cell phone attached to his belt (Pucci: 465-66, 471, 482, 518, 526).  As Pucci walked, petitioner and codefendant Rodolpho Rodriguez approached him from across the street (Pucci: 470, 528).  Petitioner came around behind Pucci, grabbed him around his neck, said, "Don't scream, give me the money," and

2

punched him, while Rodriguez punched him in the mouth and the eye (Pucci: 470, 474-78, 519, 530, 532).  Then, petitioner reached into Pucci's left pants pocket and removed the $100 that he was carrying, but Pucci stopped petitioner from taking the $500 and his cell phone (Pucci: 480, 482-83, 497). Rodriguez then hit Pucci in the temple with a brick that he picked up from the ground (Pucci: 477, 485, 533-34, 537).

4.      Pucci fell down and, as a neighbor of Pucci yelled at the men  in Spanish to leave him alone, petitioner let him go (Pucci: 485-86, 496). Petitioner and Rodriguez ran together toward 38th Avenue, chased by two of Pucci's neighbors (Pucci: 488-90).  One of the neighbors helped him and called the police, who arrived minutes later (Pucci: 495-96, 542).

5.      Police Officer *SHONDELL POLLARD* and her partner Officer Camera responded to a radio call for a robbery at 37-49 98th Street, between 37th and 38th Avenues (Pollard: 582-84, 611-12).  When they arrived, Officer Pollard saw Manuel Pucci standing on the sidewalk bleeding from his head, with one eye swollen shut, and another man helping him (Pollard: 584, 586, 612, 629).  Officer Pollard spoke to the man helping Pucci, who was translating what Pucci told him from Spanish into English (Pollard: 586, 612, 629, 639; Pucci: 497).

6.     While they were speaking, and after Sergeant *BRIAN McMENAMIN* and Officer Anthony Alvarez responded to the scene of the robbery, another radio call directed the officers to a Dunkin' Donuts at 103rd Street and Roosevelt Avenue (Pollard: 588, 614, 631; McMenamin: 563-65, 573). Sergeant McMenamin and Officer Alvarez responded immediately to the second call, and, after Officer Pollard called for an ambulance for Pucci, she and Officer Camera left as well (Pollard: 588-89, 631; McMenamin: 565, 573). Sergeant McMenamin and Officer Alvarez arrived at the Dunkin' Donuts in less than a minute, and, as they went into the store, Miguel Lopez stopped them, gestured to a taxi approaching on 103rd Street, and spoke to Officer Alvarez in Spanish (McMenamin: 566-67, 574).  The taxi turned left onto Roosevelt Avenue, and Sergeant McMenamin and Officer Alvarez followed it in their car, with Officers Pollard and Camera – who had arrived at the second location just after Sergeant McMenamin and Officer Alvarez – following in their car, never losing sight of it (McMenamin: 568-70; Pollard: 589-90, 614-15).  At 9:30 a.m., after the taxi made a right turn onto 99th Street, the officers stopped it (Pollard: 590-91, 615; McMenamin: 570, 591, 615).

4

7.    The officers approached the taxi and saw two Hispanic men[1] – petitioner and Rodriguez – in the back seat (Pollard: 590-92, 615-16; McMenamin: 570).  Guns drawn, the officers pulled petitioner and Rodriguez from the car, handcuffed them, and had them stand at the back of the car.  Other officers searched the men and the car but did not recover anything related to the robbery (Pollard: 592-93, 615, 617; McMenamin: 570).  At that point, Officer Pollard left and walked back to 98th Street and 38th Avenue to look for evidence, but found only blood on a tree in front of the location where the robbery occurred (Pollard: 593-94, 619, 631-32).

8.    As ambulance personnel were treating Pucci, Officer Pollard asked him to identify the people who attacked him (Pollard: 595-96, 633, 635, 637; Pucci: 505-07, 545, 548).  While another patrol car drove Pucci, Pollard walked to where petitioner and Rodriguez were being held (Pollard: 597, 618, 634).  At approximately 9:40 a.m., Pucci arrived and Officer Pollard asked him in English if they were the guys who attacked him (Pollard: 598, 635).  Pucci, recognizing the men's faces and the clothes, identified them to the

---

[1] The initial radio transmission described the perpetrators as black males (Pollard: 611, 642-43), but Pucci described them as Hispanic or Puerto Rican (Pucci: 474), and the person translating for Pucci told Officer Pollard that the perpetrators were two Hispanic males wearing dark clothing (Pollard: 644).  The translator also told her that they took $600 and Pucci's wallet (Pollard: 613, 626, 628, 633, 640).

police as the men who had attacked and robbed him (Pucci: 505-08, 545-48; Pollard: 638).  Then Officer Pollard arrested petitioner and Rodriguez (Pollard: 599), and an ambulance took Pucci – who had a busted lip and was bleeding from the nose and mouth, and whose left eye was swollen shut – to Elmhurst Hospital (Pucci: 508-10, 519, 533, 536-37).

9.      At the 115th Precinct, the police interviewed petitioner and Rodriguez (Pollard: 604-05, 620-21; Fischer: 654).  At 2:00 p.m., Detective *MICHAEL FISCHER* spoke to Rodriguez after reading him his *Miranda* rights (Fischer: 654-56, 659-63).  Rodriguez said that, between 100th and 101st Street on 37th Avenue, he was with petitioner, when Rodriguez punched someone and, when he heard a crowd screaming, ran and got into a cab (Fischer: 663). Then, in a written statement, Rodriguez claimed that he punched a man but did not rob him or hit him with a brick, and that, when he heard people screaming, he ran, they got into a cab, and were arrested (Fischer: 667).

10.      At 3:40 p.m., Detective Fischer began speaking to petitioner, who spoke and understood English (Fischer: 670, 672-73, 689-90). After he read petitioner his *Miranda* rights, petitioner told him that he was near 97th Street with Rodriguez, who got into a fight that petitioner tried to break up, and that they then fled on foot and got into a cab around 103rd Street (Fischer:

6

681-82).  Detective Fischer asked petitioner to write a statement, but petitioner told him that he did not know how to write (Fischer: 682-83).

11.     Detective Fischer did not remember whether he had seen any blood on petitioner or Rodriguez, but if he had he would have taken it as evidence (Fischer: 701).  The detective prepared a DD5 report in connection with this case on October 20th (Fischer: 699).

12.     Petitioner and Rodriguez were arrested and charged with Robbery in the First Degree (Penal Law § 160.15[3]), two counts of Robbery in the Second Degree (Penal Law § 160.10[1],[2a]), and Assault in the Second Degree (Penal Law § 120.05[2])(Queens County Indictment Number 3273/10).

13.     Following a *Dunaway*, *Huntley*, and *Wade* hearing, the court denied petitioner's motion to suppress Pucci's show-up identification of him and an oral statement he made to a detective at the precinct.

14.     Petitioner proceeded to trial before the Honorable Ronald Hollie of the New York State Supreme Court, and a jury.  At trial, the State presented the testimony summarized above.[2]

_____

[2]At trial, due to the passage of time, Pucci did not identify either petitioner or Rodriguez. When he identified them at the showup, he did not say who held him from behind and went through his pocket, and who punched him from the front.  Pucci, however, testified that the taller one wearing the black jacket held him from behind and took his money, and petitioner is taller and wore a black jacket in his arrest photo.  And he testified that the shorter one was wearing a black hoodie, and Rodriguez wore a black hoodie in his arrest photo.  (Pucci:

15.    At the conclusion of the trial, the jury found petitioner guilty of the second-degree robbery and second-degree assault charges, but acquitted him of the first-degree robbery charge.  On June 20, 2012, the court sentenced petitioner to determinate prison terms of seven years, plus five years' post-release supervision, on each of his robbery convictions, to run concurrently with a determinate prison term of six years, plus five years' post-release supervision, on his assault conviction.[3]

16.    In June of 2014 petitioner, through counsel, filed an appeal in the New York State Appellate Division, Second Department, raising three claims.  First, petitioner claimed that the State failed to prove his guilt beyond a reasonable doubt and that the verdict was otherwise against the weight of the evidence because, he argued, the victim's pre-trial identification was unreliable and the only evidence against him.  Second, petitioner claimed that he was denied his right to confrontation by the admission of codefendant's statements to the police putting petitioner at the scene.  Moreover, argued petitioner, this error was compounded because the court failed to issue a limiting instruction

_____

474-76, 504, 530-31; Proceedings: 607-10; People's Exhibits 4 and 5).

[3] Petitioner was tried jointly with Rodriguez, and the jury also convicted him of both second-degree robbery charges and the second-degree assault charge, and the court sentenced him to the same sentence as petitioner. Rodriguez has not yet perfected his appeal in the Appellate Division.

and the prosecutor argued in summation that petitioner's and codefendant's statements combined amounted to a joint confession. Third, petitioner claimed that certain of the prosecutor's summation comments deprived him of a fair trial.

17.    On October 14, 2014, the State filed a brief in response to petitioner's main brief, arguing that some of petitioner's claims were unpreserved in the trial court and that they were all meritless. First, the State argued that petitioner's sufficiency claim was unpreserved. The State further argued that, in any event, it presented legally-sufficient evidence at trial, and the verdict was not against the weight of the evidence. Second, the State argued that the confrontation claim was unpreserved for appellate review because, after initially objecting to the admission of the statements, petitioner agreed to their admission with redactions, did not ask for a curative instruction, and did not object to the prosecutor's summation on this basis. The State further argued that, in any event, the admission of the redacted statements was proper because they did not facially incriminate petitioner, and any error was harmless. Third, the State argued that his misconduct claim was unpreserved, meritless, and, in any event, harmless.

18.    On February 25, 2015, the New York State Appellate Division affirmed petitioner's conviction.  First, it held that petitioner failed to preserve his sufficiency claim and that, in any event, the trial evidence was sufficient to support his identity as a perpetrator of the crime.  *People v. Gilocompo*, 125 A.D.3d 1000, 1001 (2d Dept. 2015).  The Appellate Division further held that the jury's verdict was not against the weight of the evidence. *Id.*  Second, the court held that petitioner failed to preserve his confrontation claim and his objections to related comments in the prosecutor's summation. Moreover, the court held that these claims were meritless.  It found that the "challenged statements . . . taken individually, did not directly implicate the defendant."  *Id.*  And it found that, therefore, petitioner's claims about the related summation remarks were meritless, and that these remarks were fair comment on the evidence at trial.  *Id.*  Finally, the court found petitioner's remaining claims to be meritless.  *Id.*

19.    On March 6, 2015, petitioner applied for permission for leave to appeal to the New York Court of Appeals.  On April 21, 2015, the State filed a letter in response, and, on June 30, 2015, the Court of Appeals denied petitioner's application. *People v. Gilocompo*, 25 N.Y.3d 1163 (2015).

10

## The Current Petition

20.     In his petition, filed in this Court on September 6, 2016, petitioner, through counsel, Paul Skip Laisure, Esq., raises two claims.  First, he claims that the state trial court violated his right to confrontation by admitting codefendant's post-arrest statements, which he claims were insufficiently redacted.  Moreover, he claims that this error was compounded because the trial court failed to instruct the jury that the statements could not be used against petitioner and because the prosecutor used the statements in summation.  Second, petitioner claims that counsel was ineffective for failing to object to the admission of the statement and for failing to object to the prosecutor's allegedly improper summation argument about the people witnessed chasing petitioner and Rodriguez.  As explained in the attached Memorandum of Law, the Appellate Division properly relied on the state's preservation requirements in rejecting petitioner's confrontation claim.  In addition, it properly applied Supreme Court precedent in rejecting this claim on its merits.   Furthermore, the Court properly rejected petitioner's ineffectiveness claim.

11

**WHEREFORE,** and for the reasons set forth in the accompanying memorandum of law, petitioner's petition for a writ of *habeas corpus* should be denied.

_____
William H. Branigan
Assistant District Attorney
(718) 286-6652

Sworn to before me this
1st day of March, 2017

_____
Notary Public

To:    Paul Skip Laisure, Esq.
       Appellate Advocates
       111 John Street, 9th Floor
       New York, New York 10038

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LAZARO GILOCOMPO,                                  :

                Petitioner,                 :

              -against-                 :

DARWIN LACLAIR, Superintendent,                    :

              Respondent.                 :

                           :
------------------------------------------------------------x

## MEMORANDUM OF LAW

       This Memorandum of Law, along with the accompanying Affidavit and Respondent's Exhibits, is submitted in opposition to petitioner's application for a writ of *habeas corpus*.

## POINT ONE

## THE STATE COURT PROPERLY APPLIED STATE LAW TO FIND PETITIONER'S CLAIM PROCEDURALLY BARRED (Responding to Ground One of the Petition).

The New York State Appellate Division, in finding petitioner's Sixth Amendment claim unpreserved, applied an adequate and independent state procedural bar.   Moreover, petitioner cannot show cause for the procedural default because, as discussed in Point Two, counsel was effective. In addition, defendant cannot show prejudice because the state, which is entitled to deference having rejected the claim on its merits, properly held that the admission of codefendant's post-arrest statement did not violate petitioner's right to confrontation.  Indeed, the state court properly found that the codefendant's statements did not implicate petitioner.  Petitioner, however, claims that codefendant's statements identified him as a participant, and implied he robbed the victim.  He also claims that the prosecutor improperly relied on the statements in his summation and that the court erred by failing to issue a limiting instruction.  But, as discussed below, this claim is barred from this Court's review, and petitioner cannot show cause and prejudice to overcome this bar.

14

Petitioner's claim that his right to confrontation was violated by the introduction of codefendant's statement and that the prosecutor compounded that error on summation was rejected by the state court because petitioner failed to preserve his contention for appellate review. This state procedural ground constitutes an adequate and independent state ground barring review in this Court. Accordingly, this claim should be dismissed as procedurally barred.

A claim is generally barred from federal review when a state court relies on a state procedural rule to reject a claim. *Coleman v. Thompson,* 501 U.S. 722, 729 (1991). Thus, a state court's invocation of its contemporaneous objection or preservation rule as a ground for rejecting a claim will ordinarily preclude review of that issue in federal court. *Sochor v. Florida*, 504 U.S. 527 (1991); *Wainwright v. Sykes*, 433 U.S. 72 (1977). A state court need not fear treating the merits of the claim in the alternative, so long as it expressly relies in a plain statement on the procedural ground as a basis for disposing of the claim. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

Here, the state court deciding petitioner's direct appeal expressly invoked a state procedural ground in denying petitioner's claims. The New York State Appellate Division ruled that petitioner "failed to preserve for

15

appellate review his contention that his Sixth Amendment right to confrontation under *Bruton v. United States*, 391 U.S. 123 (1968), and *Crawford v. Washington*, 541 U.S. 36 (2004), was violated by the admission into evidence of statements made by a nontestifying codefendant to a detective following the codefendant's arrest, as well as by certain remarks made by the prosecutor during summation that were related to those statements." *People v. Gilocompo*, 125 A.D.3d 1000, 1001 (2d Dept. 2015). Thus, petitioner's claim was, in fact, unpreserved, and the state court made an unequivocal "plain statement" that it was relying on this procedural ground.

        In holding that petitioner's claim was unpreserved, the Appellate Division followed well-established precedent. *See People v. Gray*, 86 N.Y.2d 10 (1995); *People v. Garcia*, 83 N.Y.2d 817 (1994). Initially, counsel objected to the codefendant's statement on confrontation grounds (Proceedings: 440). But, after the trial court ruled how the detective could testify, including that petitioner was present, counsel said, "Correct" (Proceedings: 444). Under New York preservation law, if counsel wished to preserve her claim regarding the court's remedy, she had to renew her objection; otherwise, the court "must be deemed to have corrected the error to the defendant's satisfaction." *People v. Williams*, 46 N.Y.2d 1070, 1071 (1979); *see also People v. Heide*, 84 N.Y.2d

16

943, 944 (1994); *People v. Ketteles*, 62 A.D.3d 902, 905 (2d Dept. 2009) (claim unpreserved where "defendant did not object to the adequacy or timing of the court's corrective action"). Thus, here, where petitioner agreed to allow the admitted portion of codefendant's statement into evidence, he failed to preserve that claim, and the Appellate Division properly applied New York's preservation rule. This procedural ground for denial was sufficient in and of itself to result in a procedural bar in this Court. *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

Nor can petitioner establish any exception to the procedural bar. If a claim has been procedurally defaulted in state court, a federal court may address its merits only if the petitioner can show both cause for the procedural default and that he will be prejudiced by non-review of the claim or – alternatively – that a fundamental miscarriage of justice will occur if the court does not review the claim. *See Murray v. Carrier*, 477 U.S. 478, 485, 492 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994).

The existence of cause for a petitioner's procedural default will ordinarily turn on whether the petitioner can show that some objective factor external to the defense impeded counsel's efforts to comply with a state's

17

procedural rules. *Amadeo v. Zant*, 486 U.S. 214, 222 (1988) (quoting *Murray v. Carrier*, 477 U.S. at 488); *see Strickler v. Greene*, 527 U.S. 263 (1999).

Here, petitioner claims that his attorney was ineffective for failing to object to the alleged constitutional violation and that this constitutes cause for the procedural default (Petitioner's Brief: 43-4). But, as discussed in Point Two, below, counsel was not ineffective for consenting to the admission of the redacted statement or for failing to object to the summation comments. Counsel was clearly aware of the confrontation issue, having raised it before the court. But because the redacted statements did not implicate petitioner – and in fact in some ways exculpated him – counsel made a strategic decision and defendant has failed to overcome the presumption that she was effective.

Nor can petitioner establish that he will be prejudiced if the Court does not review his defaulted claim (Petitioner's Brief: 44-5). Although the Supreme Court has not defined what it means by "prejudice," it has suggested that prejudice is established by showing that, but for the default, there is a reasonable probability that the outcome of the relevant proceeding would have been different. *See Strickler v. Greene*, 527 U.S. at 289-96; *see also United States v. Frady*, 456 U.S. 152, 170 (1982) (petitioner must show not merely that the errors created "possibility of prejudice, but that they worked to his

18

actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions"). It stands to reason therefore that a petitioner cannot establish prejudice when the alleged constitutional claim is without merit. *Capiello v. Hoke*, 698 F. Supp. 1042 (E.D.N.Y.), *aff'd*, 852 F.2d 59 (2d Cir. 1988).

Here, to show prejudice, petitioner must establish, under 28 U.S.C. § 2254(d), that the state court's decision finding his claim meritless was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. *Williams v. Taylor*, 529 U.S. 362 (2000). The statute imposes a bar to relief unless the petitioner can satisfy this "substantially higher threshold" than the one applicable on *de novo* review. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). And, first, this Court must decide "whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court convictions became final." *Williams v. Taylor*, 529 U.S. at 390. This means that a petitioner must "identify a clearly established Supreme Court precedent that bears on his claim." *Lolisco v. Goord*, 263 F.3d 178, 191 (2d Cir. 2001). In this regard, a petitioner cannot succeed by showing that the State court misapplied circuit court precedent. *See Yung v. Walker*, 311 F.3d 104 (2d Cir. 2002). If

19

petitioner has failed to identify clearly established Supreme Court precedent, the District Court need go no further. *Sellan v. Kuhlman*, 261 F.3d at 309.

If the petitioner satisfies this hurdle, he must then establish that the decision is either "contrary to" or an "unreasonable application" of the precedent identified. A state court decision is "contrary" to Supreme Court precedent if it applied the incorrect legal standard or rule to the case, or if it addressed a set of facts "materially indistinguishable" from a relevant Supreme Court case and arrived at a result opposite to that reached by the Court. *Williams v. Taylor*, 529 U.S. at 404-406. In determining whether a state court has "unreasonably applied" Supreme Court precedent, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of [the Supreme] Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Under this highly deferential standard, "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable," *Id.*, because AEDPA "imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and 'demands that state-court decisions be given the benefit of

the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).   And, in making its determination, the federal court should consider the nature of the rule at issue because "'[t]he more general the rule' at issue – and thus the greater the potential for reasoned agreement among fair-minded judges – 'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'" *Renico v. Lett*, 559 U.S. at 776 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 [2004]).

Thus, before "obtaining *habeas corpus* from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. at 103.   Indeed, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, ___U.S.___, 135 S.Ct. 1372, 1376 (2015).

Here, petitioner cannot show that he was prejudiced.   Because the Appellate Division adjudicated the merits of petitioner's Confrontation Clause claim, its decision is entitled to deference in this Court.   And because petitioner cannot show that the state court's decision was contrary to, or an unreasonable

21

application of, established Supreme Court precedent, the writ should not issue.

Initially, the Appellate Division's decision rejecting petitioner's claim constitutes an adjudication on the merits. The court, reaching the merits of the issue, held that the codefendant's statements "did not directly implicate the defendant," and that, therefore, petitioner's complaints about the prosecutor's comments on those statements also were without merit. *People v. Gilocompo*, 125 A.D.3d at 1001. Thus, this Court is now required to apply section 2254's deference to that ruling. *Sellan v. Kuhlmann*, 261 F.3d 303 (2d Cir. 2001).

Second, applying that deferential standard of review to this case, the state court's determination cannot be said to have resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law. The Supreme Court's decisions in *Gray v. Maryland*, 523 U.S. 185, 196 (1998), *Richardson v. Marsh*, 481 U.S. 200, 208 (1987) *Cruz v. New York*, 481 U.S. 186 (1987), and *Bruton v. United States*, 391 U.S. 123 (1968), set forth the "clearly established" federal rule governing petitioner's claim.

A codefendant's statement that contains incriminating references to another petitioner may not be admitted into evidence in their joint trial, if the

22

codefendant does not testify. *Cruz v. New York*, 481 U.S. 186 (1987); *Bruton v. United States*, 391 U.S. 123 (1968). Codefendants' statements that do not implicate the defendant directly, however, may still be admitted into evidence with proper instructions, unless it is not possible to eliminate the facially inculpatory nature of the statement through a redaction. *Gray v. Maryland*, 523 U.S. 185, 196 (1998); *Richardson v. Marsh*, 481 U.S. 200, 208 (1987).

Here, no *Bruton* violation occurred because the codefendant's statements were sufficiently redacted so that they did not implicate petitioner in the robbery. Nor can defendant claim any prejudice from the admission of the statement or the lack of limiting instructions because, as redacted, codefendant's statements only established his presence with codefendant – a fact established overwhelmingly at trial – and, in fact, exculpated him in some ways.

Before the State called its first witness, defense counsel sought to preclude Detective Michael Fischer's testimony about Rodriguez's oral statement "based upon a *Crawford* situation," because it would violate her client's rights, and because she would not have an opportunity to cross-examine Rodriguez about the statement. The court asked the State how it intended to address the issue, and the prosecutor responded that on direct

examination the detective would omit "the part that Ms. Hughes was concerned about" and restrict his answers only to conduct regarding Rodriguez (Proceedings: 440).

The prosecutor noted that Rodriguez, in his oral statement, said that he was in the vicinity of 101st and 100th Streets near 37th Avenue when petitioner ran up to Pucci and grabbed him as if he were going to rob him. Then, when Pucci resisted, Rodriguez said that he tried to help petitioner by punching Pucci one time.  Then according to Rodriguez, he heard people yelling so he ran on foot and got into a cab (Proceedings: 441).  The prosecutor stated that he intended to elicit the fact that Rodriguez was in the vicinity of the robbery, that he was with petitioner, and that he punched the man that was there and fled into a cab when he heard people yelling (Proceedings: 441-42). Rodriguez's attorney stated that Rodriguez did not really say that he was "with" petitioner, just that petitioner was there, and objected to the characterization of his statement as saying that he was "with" petitioner (Proceedings: 442).  The prosecutor responded that he was going to elicit that Rodriguez was with petitioner, rather than that he helped petitioner, out of a concern that using the world "help" would implicate acting in concert (Proceedings: 443).

24

When the court asked what petitioner's statement was, the prosecutor explained that petitioner told Detective Fischer that he was in the area of 97th Street when Rodriguez got into a fight and petitioner tried to break it up, then ran on foot and got into a cab in the vicinity of 103rd Street (Proceedings: 443-44).  The court then ruled that the State could elicit from Detective Fischer the portion of Rodriguez's statement where he said that he was present at a certain place at a certain time, that a man was there, that petitioner was there, and that Rodriguez punched the guy and then they ran and got into a cab (Proceedings: 444).  At that, defense counsel stated, "Correct," and agreed to allow the prosecutor to ask leading questions to ensure compliance with the court's ruling (Proceedings: 444).

Here, the codefendant's statements were sufficiently redacted to avoid implicating petitioner in the robbery.  Codefendant Rodriguez's oral statement, as admitted into evidence, stated that he was with petitioner in the area of 100th and 101st Streets and 37th Avenue when an incident occurred where he punched another person, heard a crowd yelling, and then ran and got into a cab (Fischer: 663-64).  Rodriguez's written statement indicated that he hit a man one time with his fist – but not a brick – that no one took anything

from the man, and that when he heard people screaming he ran and then they got into a cab and got arrested (Fisher: 667).

Neither of those statements implicated petitioner in committing a crime. Although Rodriguez stated that he was with petitioner, that was obvious from the other evidence at trial, namely that the police arrested him with petitioner after they stopped the cab carrying the men. But Rodriguez's statement merely indicated that he – not petitioner – punched the victim, and that no one robbed the victim. Rodriguez's statement did not imply that petitioner was anywhere close to the victim at the time, or that he had any advance knowledge that Rodriguez was going to punch anyone. Given that Rodriguez's statements did not directly implicate petitioner in any wrongdoing, and in fact indicated that petitioner was not involved in the altercation at all, his contention that their admission denied him his right to confrontation is meritless.

And, even if this violated petitioner's right to confrontation, he simply cannot demonstrate any prejudice that would have required the State to reverse his conviction. As the Supreme Court has held, the "mere finding of a violation of the *Bruton* rule in the course of the trial . . . does not automatically require reversal of the ensuing criminal conviction." *Schneble*

*v. Florida*, 92 S. Ct. 1056, 1059 (1972).  Here, the "properly admitted evidence of guilt [was] so overwhelming, and the prejudicial effect of the codefendant's admission [was] so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." *Schneble v. Florida*, 92 S. Ct. at 1059.

Even assuming an error in the admission of the statement, petitioner simply cannot demonstrate harm.  First, any inculpatory value was minimal because, at most, the oral statement placed him with codefendant at the time of the robbery.  Second, the evidence overwhelmingly demonstrated this fact because the two men were caught together in a taxi shortly after the robbery. And petitioner admitted that he was with codefendant when codefendant got into a fight.  Thus, there was no possibility that petitioner was harmed by the admission of evidence linking him to codefendant at the time of the robbery.

Petitioner, however, claims that Rodriguez, simply by stating that petitioner was with him and that they fled together, implicitly accused petitioner of robbing the victim (Petitioner's Brief: 27-8).  Petitioner contends that Rodriguez's statement contained enough detail for the jury to infer that he had admitted some level of culpability with respect to what happened to Pucci

27

– even though he denied robbing Pucci or hitting Pucci with a brick – and that the jury must then have assumed that petitioner must be culpable, since the statements placed petitioner at the scene and "implied" petitioner's consciousness of guilt by saying the two men fled together. But such surmises about what the jury might have taken from Rodriguez's statements are purely speculative, and only reinforce the fact that the statements were not facially incriminating as to petitioner.

Moreover, petitioner claims that the prosecutor compounded this error by arguing that petitioner and Rodriguez admitted to being at the crime scene (Petitioner's Brief: 28-9; Summations: 807). But petitioner is wrong. Indeed, the prosecutor merely argued that petitioner and Rodriguez each had acknowledged being present at the time of the incident, which was an accurate description of the statements made by the men. Petitioner and Rodriguez both acknowledged being there that day, and Rodriguez said that it was just a fight and he only punched Pucci once. The prosecutor's comments were, thus, not misleading and did not suggest that petitioner had confessed.

In addition, petitioner argues that the trial court compounded the error by failing to give a limiting instruction and overruling defense objections to the prosecutor's arguments that the men admitted to being together

(Petitioner's Brief: 29).  But petitioner did not request such a charge.  And petitioner may have had a strategic reason for doing so, because the statement – which indicated that petitioner was not involved in the altercation – actually benefitted him.  Moreover, any instruction that codefendant's statement could not be used against petitioner simply would have made no difference in the trial.  The statements were evidence against petitioner only to the extent that they placed him with codefendant.  Petitioner admitted that he was with codefendant to the police and he was caught with codefendant shortly after the crime.  In addition, the prosecutor never implied anything more than that the men both admitted to being together.  Any instruction on this issue would not have affected the trial's outcome.

Furthermore, despite defendant's claims, the Appellate Division properly cited *Bruton* in its decision denying his appeal (Petitioner's Brief: 49). While *Bruton* and its progeny addressed whether court instructions could overcome the introduction of certain incriminating hearsay, the absence of instructions here did not remove this case from *Bruton* analysis.  Moreover, while those cases focused on the redaction of the defendant's name, the question here is whether a redaction of the petitioner's behavior from the

statement – robbing the victim – was sufficient to allow admission of the statement.

Finally, as discussed above, petitioner cannot claim any prejudice because any error in the admission of the statement was harmless (Petitioner's Brief: 30-4). Here, the police stopped petitioner only a few blocks from the crime, shortly after it happened. And the victim identified petitioner as one of the people who robbed him about 15 minutes after the crime occurred (Pucci: 505). And petitioner admitted that he was near the crime scene with Rodriguez, who got into a fight that petitioner tried to break up, and that they then fled on foot and got into a cab around 103rd Street (Fischer: 681-82). This constituted powerful evidence that petitioner robbed the victim. Indeed, this evidence, and not Rodriguez's statement constituted "the most persuasive evidence of petitioner's guilt" (Petitioner's Brief: 33). In addition, as discussed above, where petitioner was caught with codefendant and admitted to being with him during the fight, he cannot claim any prejudice from a statement that merely placed him with codefendant.

In sum, the Appellate Division properly relied on New York's preservation rule in rejecting petitioner's claim. And petitioner cannot show cause and prejudice for this procedural default. The state court properly

rejected this claim on its merits and petitioner cannot demonstrate prejudice where the allegedly improper evidence established only that petitioner was with codefendant – a fact overwhelming established at trial.

## POINT TWO

**THE STATE COURT'S REJECTION OF PETITIONER'S INEFFECTIVENESS CLAIM WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED SUPREME COURT PRECEDENT (Responding to Ground Two of the Petition).**

Petitioner contends that he received the ineffective assistance of counsel because his trial attorney failed to object to the admission of codefendant's statement without further redaction and because she failed to object to the prosecutor's alleged implication that a non-testifying witness had identified petitioner as a perpetrator of the robbery.  But the state Appellate Division properly rejected petitioner's ineffectiveness claims and its decision is entitled to deference from this Court.  To the extent that petitioner failed to raise certain ineffectiveness claims in state court, those claims are not exhausted for review here.

To the extent that the Appellate Division adjudicated the merits of petitioner's ineffectiveness claims, its decision is entitled to deference in

this Court.  And because petitioner cannot show that the state court's decision was contrary to, or an unreasonable application of, established Supreme Court precedent, the writ should not issue.  *Williams v. Taylor*, 529 U.S. at 410.

First, the Appellate Division's decisions rejecting petitioner's ineffectiveness claim constituted an adjudication on the merits.  On his direct appeal, petitioner claimed that his attorney was ineffective for failing to object to the allegedly inadequate redaction of codefendant's statement and to the prosecutor's allegedly improper argument relying on that statement, and for failing to object to other improper summation comments by the prosecutor, including his alleged use of an identification by a non-testifying witness (Petitioner's Brief: 42-44, 52).  And the Appellate Division held that petitioner's "remaining contentions" – which included his claims of ineffectiveness – were "without merit."  *People v. Gilocompo*, 125 A.D.3d at 1001.  Accordingly, this Court is now required to apply section 2254's standard of deference to this ruling.  *Sellan v. Kuhlmann*, 261 F.3d 311-12.

Second, applying that deferential standard of review to this case, the state court's determination cannot be said to have resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law.  The Supreme Court's decision in *Strickland v.*

32

*Washington*, 466 U.S. 668 (1984), sets forth the "clearly established" federal rule governing a claim of ineffective assistance of counsel. In order to demonstrate that trial counsel was ineffective under *Strickland*, a convicted petitioner must meet both a performance test and a prejudice test. The performance test requires a showing that counsel's "representation fell below an objective standard of reasonableness." *Id.* at 687-688. The prejudice test requires a showing that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688.

In assessing the reasonableness of counsel's performance, reviewing courts are "highly deferential." *Id.* at 689. Counsel is "strongly presumed" to have rendered adequate assistance and to have made all significant decisions in the exercise of "reasonable" professional judgment. *Id.* at 689. Indeed, a finding that counsel acted unreasonably is not warranted unless counsel's conduct so undermined the adversarial process that it cannot be relied upon as having produced a just result. *Id.* at 686.

Furthermore, a *habeas* court addressing a claim of ineffectiveness under section 2254(d) must examine "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Under this standard, "a *habeas* court must determine what

33

arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding" in *Strickland*. *Id.* at 102. Thus, "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." *Id.*

And while "[e]ven under *de novo* review, the standard for judging counsel's representation is a most deferential one . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* at 105. Moreover, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Yarborough v. Alvarado*, 541 U.S. at 664.  Indeed, "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. at 105 (internal citations omitted). Thus, the job of the *habeas* court is not to determine "whether counsel's actions were reasonable," but rather is to determine "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

34

And, as the Second Circuit has held, an attorney may waive a defendant's confrontation rights for tactical reasons. *United States v. Plitman*, 194 F.3d 59, 64 (2d Cir. 1999).

Applying these principles to petitioner's claims, petitioner here has not overcome the presumption of adequate assistance by showing that counsel's actions were deficient and prejudicial to him. First, counsel cannot be held ineffective for her handling of codefendant's statement (Petitioner's Brief: 35-6). Counsel was clearly aware of the confrontation issue, having objected to the admission of codefendant's statement, in which he claimed that he helped petitioner when he appeared to be robbing another man (Proceedings: 440, 441). Upon counsel's objection, the court limited the prosecution to eliciting that Rodriguez said he was in a place with petitioner and another man, he punched the man, and then they ran and got into a taxi cab (Proceedings: 440, 444). This redacted statement did not implicate petitioner – and in fact in some ways exculpated him – and, therefore, she had no basis on which to object to their admission. And for that same reason she had no reason to seek an instruction from the court to the jury that it could not consider Rodriguez's statement against petitioner, since the statement actually indicated that petitioner had no involvement in the incident.

35

Nor can counsel be held ineffective for failing to object to the prosecutor's summation comment about Lopez's identification.   First, petitioner may not raise additional arguments that were not raised in state court.   Now, he argues that counsel was ineffective for failing to object to allegedly improper testimony from Police Officer McMenamin and to object to related comments in the prosecutor's opening statement (Petitioner's Brief: 36-7), but he never raised these claims in state court.  Therefore, he has failed to exhaust them for review here.  *Picard v. Connor*, 404 U.S. 270, 276 (1971).

In any event, the state court properly rejected his claim that counsel was ineffective for failing to raise certain objections.  None of those objections would have succeeded, and, if they did, they would not have affected the outcome of the trial.   Essentially, petitioner claims that the prosecutor improperly elicited from Police Officer McMenamin that someone led him to stop the taxi in which petitioner and codefendant were riding, and that he improperly used this evidence in his opening statement and summation (Petitioner's Brief: 36-7; Openings: 455; McMenamin: 567-70; Summations: 804).   But this hearsay evidence was necessary to explain why the police stopped the taxi, and any objection would have been fruitless.  The prosecutor in his opening only stated that the police stopped the taxi after speaking to

36

Miguel Lopez and made no improper inferences.    Moreover, while the prosecutor, on summation, argued that people were chasing the defendants, that the police spoke to someone, and that the defendants never left the people's sight, he never said that anyone identified them to the police.  And even if there might have been some improper inference, counsel cannot be held ineffective for failing to object to this isolated, vague comment.  Indeed, these comments were not so egregious as to deprive petitioner of a fair trial.  And to extent that the prosecutor was discussing the chase that ultimately led to the capture of the men, it was fair comment on the trial evidence.

Instead of raising ineffectual objections, having severed the truly damaging part of codefendant's statement, counsel attacked the identification by the victim of the two men.  Indeed, she properly focused on the victim's ability to identify the men after he had been beaten badly, and on his possible motive, as an undocumented immigrant, to identify someone quickly to avoid a protracted interaction with the police (Summations: 756-61).  She also noted certain problems with the testimony, including that the police radio run was for two black – not Latino – men (Pollard: 611; Summations: 762), and that, despite the victim's substantial bleeding, no blood was found on petitioner's clothes (Fisher: 701-02; Summations: 765-66).  And she attacked the reliability

37

of petitioner's admission because it was not witnessed by anyone except for Detective Fisher, was not videotaped, and was not written by petitioner (Fisher: 693-94; Summations: 769-70). Thus, where counsel had a strategy to attack the identification and the statement, and she successfully objected to the prejudicial part of codefendant's statement, counsel cannot be held ineffective for failing to raise arguments that would not have affected the outcome of the trial.

Nor can petitioner meet the second prong of *Strickland* by establishing that defense counsel's failure to object to admission of the statement deprived him of a fair trial. The statement was not inculpatory and established only what was already established by the evidence at trial – that the two men were together around the time of the robbery. And the prosecutor's comments only referenced that same fact – that the men were seen fleeing together.

Finally, petitioner cannot demonstrate prejudice because, as discussed in Point One above, the trial evidence was overwhelming. Petitioner was caught shortly after the robbery only a few blocks from where it happened and the victim testified that he identified him only 15 minutes after the attack (Pucci: 505). Moreover, petitioner admitted to being in a fight with

codefendant and another man.  This constituted overwhelming proof of his guilt.  And even if counsel had succeeded in precluding the statement and argument, it would not have changed the result of the trial.

In sum, the state court, whose decision is entitled to deference, properly denied petitioner's claim that counsel was ineffective.  Counsel successfully objected to the prejudicial part of Rodriguez's statement that accused petitioner of robbery and only left the portion merely placing the men together – a fact overwhelmingly proved at trial.

## <u>CONCLUSION</u>

For the reasons set forth above, petitioner's petition for a writ of *habeas corpus* should be denied.

Respectfully submitted,

RICHARD A. BROWN
District Attorney
Queens Counsel

JOHN M. CASTELLANO
JOHNNETTE TRAILL
WILLIAM H. BRANIGAN

Assistant District Attorneys
of Counsel

March 1, 2017